UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEKSANDR ARAPOV, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, *et al.*,[1]<br><br>Defendants. | Case No. 24-cv-3013-MJS |

**MEMORANDUM OPINION**

Plaintiffs Aleksandr Arapov and Kseniia Arapova bring this suit against U.S. Secretary of State Marco Rubio and Robert Jachim, the U.S. State Department's Director of Screening, Analysis, and Coordination—both in their official capacities—to compel a final decision on Plaintiffs' EB-1A immigrant visa application. Their application has been suspended in "administrative processing" since July 2023. Through their claims, Plaintiffs allege that Defendants have unreasonably delayed and unlawfully withheld a final determination on their visa application, and they seek relief under the Administrative Procedure Act ("APA"), 8 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361. Defendants move to dismiss, arguing that Plaintiffs' claims fail because: (1) they do not identify a clear, non-discretionary duty that Defendants have failed to carry out, and (2) the doctrine of consular non-reviewability bars their claims. Disagreeing on both fronts, the Court **DENIES** Defendants' motion (ECF No. 10).

---

[1] In his official capacity as Secretary of State, Marco Rubio was automatically substituted into this matter for his predecessor Antony J. Blinken pursuant to Fed R. Civ. P. 25(d).

## RELEVANT STATUTORY FRAMEWORK

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, allows the State Department to issue immigration visas to individuals based on different classifications, including employment-based classifications. *See* 8 U.S.C. § 1153(b). One such category of visa, the EB-1A, is available to individuals of "extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim[.]" 8 U.S.C. § 1153(b)(1)(A). Sometimes referred to as the "Einstein" or "genius" visa, *see Amin v. Mayorkas*, 24 F.4th 383, 386–87 (5th Cir. 2022), the EB-1A visa is considered a "priority" immigrant visa reserved for individuals at "the very top of [their] field[,]" 8 C.F.R. § 204.5(h)(2), who seek "to enter the United States to continue work in [their] area of extraordinary ability[.]" 8 U.S.C. § 1153(b)(1)(A)(ii).

To obtain an EB-1A visa, a petitioner must first file a Form I-140 with the U.S. Citizenship and Immigration Services ("USCIS") and provide evidence that they have "sustained national or international acclaim and that [their] achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). This evidence can include "a one-time achievement (that is, a major, international recognized award)"—such as an Olympic gold medal or Nobel Prize, *Amin*, 24 F.4th at 387—or can otherwise be satisfied by an applicant meeting at least three of ten criteria enumerated in the applicable regulations. *See* 8 C.F.R. § 204.5(h)(3) (specifying the contours of the EB-1A visa, its requirements, and the types of evidence necessary to demonstrate eligibility). Unlike some other visa categories, a petitioner's qualification for an EB-1A visa is not contingent on a specific offer of employment within the United States, so long as the petitioner establishes that they intend to "continue work[ing] in the area of expertise" upon entry. 8 C.F.R § 204.5(h)(5).

After USCIS approves a Form I-140, USCIS forwards the petition to the National Visa Center ("NVC"). *See* 8 C.F.R. § 204.5(n)(1). At that point, a petitioner must submit an online

Immigrant Visa Application ("Form DS-260") to the NVC, which then schedules the applicant for an interview at a nearby U.S. embassy or consulate. *See* 22 C.F.R. §§ 42.61–62.

Following that interview, the consular officer is responsible for reviewing and rendering a decision on the visa application—either by issuing a visa, refusing the visa, or deciding to "discontinue granting" the visa. 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."); 22 C.F.R. § 42.81(a) ("[T]he consular officer must issue the visa, refuse the visa … or … discontinue granting the visa."). In doing so, the consular officer "shall determine on the basis of the applicant's representations and the visa application and other relevant documentation" whether the applicant has a "proper immigrant classification, if any," and whether they are "eligib[le] to receive a visa." 22 C.F.R. § 42.62(b)(1). If, for instance, the consular officer finds the existing information "is inadequate to determine" the applicant's visa eligibility, they may ask the applicant to provide additional documentation. *Id.* § 42.63(c). In that circumstance, the consular officer issues what is technically termed a "refusal" under 8 U.S.C. § 1201(g)[2] and then places the matter into "administrative processing." *See id.*

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts, accepted as true, from Plaintiffs' operative complaint. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Plaintiffs Aleksandr Arapov and his wife, Kseniia Arapova, are Russian nationals. (ECF No. 7 ("Am. Compl.") ¶¶ 13–14.) They seek immigrant visas under the EB-1A category. (*See id.*) Mr. Arapov is a "mechatronics professional" with "expertise in automation of technological

---

[2] Because this step occurs under Section 221(g) of the INA, 8 U.S.C. § 1201(g), it is sometimes shorthanded as a "221(g) refusal." *See, e.g.*, *Fetanat v. Rubio*, 2025 WL 2643487, at *2, n.2 (D.D.C. Sept. 15, 2025).

processes and control in technical systems[,]" as well as a "published researcher on the topics of innovative software for training in mechatronics" and "artificial intelligence as the basis for formation in mechatronic systems." *(Id*. ¶¶ 46–47.)[3] He is a past recipient of major awards in mechatronics, including "the Medallion for Excellence at the WorldSkills Global Championship and [second] place at the Euroskills European Championship." (*Id*. ¶ 48.)

On December 29, 2022, USCIS approved Mr. Arapov's Form I-140 and forwarded the petition to the NVC. (Am. Compl. ¶ 49.) Three months later, on March 20, 2023, Mr. Arapov submitted a Form DS-260 for himself and his wife. (*Id*. ¶ 51 (noting that Ms. Arapova is included in the application as a "derivative beneficiary").) On July 26, 2023, they attended their visa interview at the U.S. Embassy in Warsaw, Poland. At the end of the interview, the consular officer advised that their application would require further administrative processing and issued a refusal under 8 U.S.C. § 1201(g). (*Id*. ¶ 53.) The consular officer then gave Plaintiffs a notice that read: "We will contact you when processing is completed." (*Id*. ¶ 54.) The very next day, Plaintiffs submitted the additional information requested for administrative processing. (*Id*. ¶ 55.)

At the time Plaintiffs filed this action in October 2024—approximately 15 months after their interview and the 221(g) refusal—the State Department's Consular Electronic Application Center ("CEAC") Visa Status Check website indicated that Plaintiffs' application status was still "[r]efused." (*Id*. ¶ 56.) The website advises "those who were 'refused for administrative processing [that their] case will remain refused while undergoing such processing[,]'" that they "will receive another adjudication once such processing is complete[,]" and that they "will be contacted if

---

[3] Neither Plaintiffs' Complaint nor their briefing really explains the field of mechatronics. Based on the Court's research, mechatronics is described as a complex, "multidisciplinary science" aimed at the "synergistic integration of mechanics, electronics, and control theory within product design and manufacturing." Michael F. Zaeh & Robert Gao, *Mechatronics*, *in* CIRP ENCYCLOPEDIA OF PRODUCTION ENGINEERING (Mar. 13, 2018), online at https://perma.cc/49S2-L8HF.

additional information is needed." (*Id.*; *see also* ECF No. 7-3, CEAC Online Case Status.) Plaintiffs allege they have made "numerous inquiries" and undertaken "all reasonable attempts … to determine the nature of the delay[,]" but to no avail. (Am. Compl. ¶ 58.)

As of this ruling—now approximately 26 months after Plaintiffs' consular interview and the 221(g) refusal—Plaintiffs' application remains pending with no final decision.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal on the grounds that the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion brought under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (citation omitted). But courts must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

Under Federal Rule of Civil Procedure 12(b)(6), courts should dismiss a complaint that fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Under Rule 12(b)(6), a court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). That said, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot forestall a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

As indicated, Defendants press two arguments for dismissal under Rules 12(b)(1) and 12(b)(6).[4] First, Defendants argue that Plaintiffs' claims fail because there is no clear and discrete duty that obligates further adjudication of their visa application after it was initially "refused" under Section 221(g) and placed into administrative processing. (ECF No. 10 ("Defs.' Mem.") at 10–14.)[5] Second, Defendants insist the doctrine of consular non-reviewability bars judicial review here. (*Id.* at 15–18.) On both fronts, Defendants rely heavily on an unpublished, *per curiam* decision from the D.C. Circuit: *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024).

In engaging with these points, this Court is hardly wading into uncharted waters. Our District has seen—and continues to see—a deluge of cases challenging similar delays on other visa applications that have languished in Section 221(g) refusal purgatory. Those lawsuits have generated scores of rulings from judges across the courthouse with varying results. As such, this Court writes with the benefit of its colleagues' thoughtful views on these same subjects, and it borrows from those decisions in substantial part. Simply put, this Court agrees with the myriad cases rejecting Defendants' same theories for dismissal and concluding that *Karimova* is a nonbinding ruling that this Court need not—and does not—follow here.

---

[4] Defendants never really parse out which arguments they bring—or which claims they attack—under Rule 12(b)(1) versus Rule 12(b)(6), leaving that task to the Court, it seems. For purposes of Plaintiffs' Mandamus Act claim, the "three threshold requirements are jurisdictional," including the need to show "a clear duty to act," which would implicate Rule 12(b)(1). *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). But the parallel argument as to Plaintiffs' APA claim addresses only whether they have stated a claim for relief, not a basis for jurisdiction, which means the issue is analyzed under Rule 12(b)(6). *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011). Finally, the doctrine of consular non-reviewability is "not a jurisdictional defense," *Janay v. Blinken*, 743 F. Supp. 3d 96, 113 (D.D.C. 2024), and thus reviewed under Rule 12(b)(6). Ultimately, regardless of which Rule 12 lens the Court uses to scrutinize Defendants' dismissal arguments, it would reach the same result.

[5] Citations to the parties' briefs are to the page numbers assigned by the electronic case-filing system.

I.  **Defendants Have A Discrete, Non-Discretionary Duty To Render A Final Decision**

Plaintiffs' claims sound under the APA and the Mandamus Act. The APA provides that a "reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 55 (2004); *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Similarly, for purposes of their mandamus claim, Plaintiffs must show that Defendants are "violating a clear duty to act," among other factors. *Am. Hosp. Ass'n*, 812 F.3d at 189. Under both theories, then, Plaintiffs' claims are viable only if premised on Defendants' alleged failure to carry out a discrete, clear, and non-discretionary duty to act.

Defendants say that Plaintiffs' claims fail on this basis because there is no such "duty to act further" on Plaintiffs' application. (Defs.' Mem. at 15.) According to Defendants, "after a consular officer refuses a visa application under Section 221(g) … there is no further statutory or regulatory command to act[.]" (*Id.* at 7.) Joining plenty of good company, this Court disagrees.

As many judges in this District have concluded, "[i]ssuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations." *Kahbasi v. Blinken*, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024) (AliKhan, J.); *see also Fetanat v. Rubio*, 2025 WL 2643487, at *2–3 (D.D.C. Sept. 15, 2025) (Ali, J.); *Tolymbekova v. Rubio*, 2025 WL 2576312, at *5 (D.D.C. Sept. 5, 2025) (Faruqui, M.J.); *Aramnahad v. Rubio*, 2025 WL 973483, at *8–10 (D.D.C. Mar. 31, 2025) (Upadhyaya, M.J.); *Motevali v. Rubio*, 2025 WL 885116, at *5–6 (D.D.C. Mar. 21, 2025) (Sooknanan, J.); *Fakhimi v. Dep't of State*, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023) (Kollar-Kotelly, J.); *Khazaei v.*

7

*Blinken*, 2023 WL 6065095, at \*6 (D.D.C. Sept. 18, 2023) (Boasberg, J.).[6] Generally speaking, those courts have grounded this determination in the APA itself—namely, 5 U.S.C. §§ 555(b) and 706(1)—as well as the INA and its implementing regulations, including 22 C.F.R. § 42.81(a) (providing that "the consular officer must issue the visa," "refuse the visa," or "discontinue granting the visa"). And those courts have rejected the notion that a 221(g) refusal—and the concomitant placement of an application into "administrative processing" limbo—suffices to complete that duty. While the agency "may 'choose to characterize' a consular officer's decision to place an application in administrative processing as a final refusal … 'that magic word is not a get-out-of-review-free card.'" *Aramnahad*, 2025 WL 973483, at \*9 (quoting *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022)); *Fetanat*, 2025 WL 2643487, at \*3. Judge Sooknanan recently summed up the practical reality here quite well:

> When a consular officer decides to refuse a visa-applicant's application for administrative processing, the officer has certainly made *a* decision about the application: that the applicant should not yet receive the visa and that more processing is required. But … the Department of State has not yet made *the* decision about their applications—the determination that puts their applications to rest … [Plaintiffs] never received *the* all-important yes-or-no decision from the reviewing officer about the benefit they sought to obtain.

*Thein v. Trump*, 2025 WL 2418402, at \*9 (D.D.C. Aug. 21, 2025) (emphases in original); *see also Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024) ("In other words, the application is still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal

---

[6] Other judges in this District have assumed without deciding that a predicate duty exists. *See, e.g.*, *Rashidian v. Garland*, 2024 WL 1076810, at \*5 (D.D.C. Mar. 8, 2024) (Reyes, J.) (emphasizing that Defendants' argument has "met with a frosty reception … in this District" but proceeding to dismiss the case on other grounds, assuming that such a duty exists). Otherwise, some judges—based on the Court's research—have reached the opposite conclusion and sided with Defendants on this issue, *i.e.*, holding that once a 221(g) refusal issues, there is no remaining clear, discrete, and non-discretionary duty to compel. *See, e.g.*, *Seifan v. Sweeney*, 2025 WL 2171093, at \*4–6 (D.D.C. July 31, 2025) (Contreras, J.); *Rahiminejad v. Rubio*, 2025 WL 2144092, at \*2–4 (D.D.C. July 29, 2025) (Cooper, J.); *Esmaeilzadeh v. Rubio*, 2025 WL 1865159, at \*5–11 (D.D.C. July 7, 2025) (Harvey, M.J.); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 99–103 (D.D.C. 2024) (McFadden, J.). As explained, though, the Court takes the contrary view and aligns instead with those cases above that have acknowledged such a duty in this context.

sense that it has not yet been 'granted' or 'denied.'"). The Court agrees with this "majority view[,]" *Kahbasi*, 2024 WL 3202222, at *5, and rejects Defendants' first argument for dismissal.

In resisting this outcome, Defendants rely almost exclusively on the D.C. Circuit's decision in *Karimova*. They go so far as to insist that *"Karimova* is dispositive of the claims presented in this case." (Defs.' Mem. at 15.) But by its own terms, *Karimova* cannot bear the weight Defendants would place on it. After all, as Defendants acknowledge (albeit in a footnote), *Karimova* "is an unpublished opinion of the D.C. Circuit." (*Id.* at 11 n.3.) And under the D.C. Circuit Rules, "while unpublished dispositions may be cited to the court … a panel's decision to issue an unpublished disposition *means that the panel sees no precedential value in that disposition*." D.C. Cir. Rule 36(e)(2) (emphasis added). This Court "takes the D.C. Circuit at its word[,]" *Shushkov v. Rubio*, 2025 WL 2389939, at *3 (D.D.C. Aug. 18, 2025), and will not afford dispositive weight to *Karimova*. Instead, it agrees with the prevailing view that "*Karimova* is not binding." *Aramnahad*, 2025 WL 973483, at *6; *see also, e.g.*, *Fetanat*, 2025 WL 2643487, at *4; *Thein*, 2025 WL 2418402, at *8; *Shushkov*, 2025 WL 2389939, at *3–4; *Tolymbekova*, 2025 WL 2576312, at *4; *Akter v. Flook*, 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025).

Further, for many of the same reasons explained in those same cases and others, the Court does not find *Karimova*'s rationale persuasive here either. For one thing, *Karimova* focused exclusively on "Section 555(b) of the APA as the source of the consular officer's alleged duty to act[,]" *Karimova*, 2024 WL 3517852, at *3, whereas Plaintiffs have grounded their claims here in Section 706 of the APA, as well as various provisions of the INA and the statute's implementing regulations. "*Karimova* did not consider these sources." *Haeri Mehneh v. Blinken*, 2024 WL 5116521, at *6 (D.D.C. Dec. 16, 2024); *see also Aramnahad*, 2025 WL 973483, at *8 (distinguishing *Karimova* on this basis and collecting cases doing the same). More, the underlying

factual allegations set this case apart. The plaintiff in *Karimova* acknowledged that her application had been "officially refused," which meant the D.C. Circuit interpreted the claim as one asking the government to "re-adjudicate [an] already-refused application[.]" *Fetanat*, 2025 WL 2643487, at *3 (citing *Karimova*, 2024 WL 3517852, at *3); *see also Shushkov*, 2025 WL 2389939, at *4. Plaintiffs' allegations here are quite different. They assert that Defendants continue to withhold final, official action on their visa application—whether final approval or final refusal—and maintain that the interim 221(g) refusal falls short. (Am. Compl. ¶¶ 6, 9, 56–58, 72–73.) Indeed, as Plaintiffs allege, the State Department's own website advises that although their "case will remain refused while undergoing [administrative] processing[,]" they "will receive another adjudication once such processing is complete[.]" (*Id.* ¶ 56; ECF No. 7-3, CEAC Online Case Status.) And more still, the Court believes *Karimova* placed far "too little emphasis on … the realities of the visa-adjudication process[,]" *Shushkov*, 2024 WL 2389939, at *4, and "what is actually happening" in a practical and real-world sense, *Thein*, 2025 WL 2418402, at *10.

In short, the Court finds that Plaintiffs' claims are premised on a clear, discrete, and non-discretionary duty to act, and it rejects Defendants' argument to the contrary.

**II.   The Consular Non-Reviewability Doctrine Does Not Apply**

Defendants' alternative argument for dismissal rests on the doctrine of consular non-reviewability. (Defs.' Mem. at 15–18.) This doctrine "shields a consular officer's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). As Defendants tell it, Plaintiffs' claims run headlong into the doctrine because a "consular officer has decided to withhold issuing a visa"—a decision they say is "not reviewable and ends this matter." (Defs.' Mem. at 17.)

10

But as the discussion above makes clear, Defendants have not truly made that decision, certainly not in any final sense. This means Plaintiffs are not asking for judicial review of the *substance* of any final decision to grant or deny a visa; they just want a conclusive answer one way or the other. And it is the substantive decision—and the surrounding policy judgments of the political branches—that the doctrine aims to protect. *Baan Rao*, 985 F.3d at 1024 ("Decisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances," making "such judgments … more appropriate to either the Legislature or the Executive.") (cleaned up); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 290–91 (D.D.C. 2016) ("When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all."). For these reasons, judges in this District have overwhelmingly agreed that the doctrine of consular non-reviewability is not implicated on these facts. *Fetanat*, 2025 WL 2643487, at *4; *Thein*, 2025 WL 2418402, at *7–10; *Tolymbekova*, 2025 WL 2576312, at *3–4; *Shushkov*, 2025 WL 2389939, at *4–5; *Aramnahad*, 2025 WL 973483, at *10; *Fakhimi*, 2023 WL 6976073, at *4; *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020). To borrow Judge AliKhan's words on the subject, Plaintiffs' suit "is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered." *Shushkov*, 2025 WL 2389939, at *5.

*Karimova* does not help Defendants on this point either. The Court does not find *Karimova* binding or even persuasive for the reasons explained. And on top of that, *Karimova* expressly declined to even reach the issue of consular non-reviewability. *Karimova*, 2024 WL 3517852, at

11

*6 ("[W]e need not decide whether that principle of nonreviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision[.]").

As in so many other cases, then, this Court holds that the doctrine of consular non-reviewability does not bar Plaintiffs' claims here.

\* \* \*

Because it disagrees with Defendants' two arguments for dismissal, the Court's analysis ends there. Defendants expressly—and strategically, it seems—made the affirmative decision to not seek dismissal based on an argument that Plaintiffs have not alleged unreasonable delay under the so-called *TRAC* factors. *See Telecomms. Rsch. & Action Ctr. v. F.C.C. ("TRAC")*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). Instead, Defendants suggested they would separately move for judgment on the pleadings on that basis, if necessary. (Defs.' Mem. at 7 n.2.) Given that, and because Plaintiffs likewise implore the Court to defer any merits-focused analysis as to whether the delay here is unreasonable (Pls.' Mem. at 38–40), the Court leaves that issue for another day.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss. The Court will issue a separate order so stating.

Dated: September 25, 2025

                                                    MATTHEW J. SHARBAUGH
                                                    United States Magistrate Judge